**CITY AND COUNTY OF DALLAS LEVEE IMP. DIST. ex rel. SIMOND et al. v. INDUSTRIAL PROPERTIES CORPORATION.**

No. 8330.

Circuit Court of Appeals, Fifth Circuit.

April 16, 1937.

Eberhard P. Deutsch, of New Orleans, La., Alex F. Weisberg, of Dallas, Tex., and Amos H. Watts, of Chicago, Ill., for appellants.

William Harrison Shook, of Dallas, Tex., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

This suit, purporting to be brought under the authority of subdivision (i) of article 8017, chapter 6, title 128, Rev.Civil Stats. of Texas 1925,[1] was for taxes and for the

---

[1] Article 8017: "Suit shall be brought in the name of the district for the collection of the taxes and the foreclosure of the lien thereof in the following manner:

"(a) Such suits shall be brought in the district court of the county in which the land or the major part thereof is situated, and such courts shall give judgment against each tract of land for the

foreclosure of tax liens upon described property of the defendant. It was alleged that all of the $6,000,000 of bonds, authorized and issued by the Levee District, were delinquent, either as to principal or interest, that in addition to the relators, there were other bondholders, and that the suit was brought for their use and benefit, too.

The claim was that though the taxes required to service the bonds of the District had been properly assessed and levied, no collections had been made for years, and that to protect their interests it had become necessary for bondholders to take steps, including the bringing of this suit, to have the taxes collected and appropriated to the bonds. It was alleged that the District, in whose name under the statute suit was brought, was a mere nominal plaintiff, having no interest in the taxes sought to be collected, and that the requisite diversity of citizenship existed because relators, the real plaintiffs, were nonresidents and noncitizens of Texas, while defendant was a Texas corporation.

On some of the bonds relators had obtained judgment in the same court on the law side of the docket, and in addition to diversity the claim that this proceeding was ancillary was relied on for jurisdiction.

Defendant moved to dismiss for want of jurisdiction generally, and on the specific grounds: (1) That the suit was in no manner ancillary to the law judgments; (2) that the relators were not the real plaintiffs in the suit, but the Levee Improvement District was, and the District and the defendant being both citizens and residents of Texas, requisite diversity was wanting; (3) that jurisdiction was wanting in any case, because chapter 6 of title 128 (articles 7972–8042) under which the bonds were issued and the suit attempted to be brought, had invested the commissioners court of Dallas county with complete jurisdiction over the affairs of the District, and the tax collector of Dallas county had been made collector of the taxes thereof. That the enforcement of the taxes and the administration of the affairs of the District, including matters pertaining to its bond obligations, are matters wholly confided by the statutes to the jurisdiction of the Texas state courts, and are not matters justiciable in the federal court.

The District Judge canvassed and disposed adversely of all the contentions plaintiffs put forward in opposition. He dismissed the bill for want of jurisdiction, either original or ancillary, and in a carefully prepared and well-considered opinion, City and County of Dallas Levee Improvement Dist. ex rel. Simond v. Allen (D.C.) 17 F. Supp. 777, gave his reasons for doing so.

We agree, with the District Judge, both in the conclusion he reached and in the grounds upon which he rested it. We need not write much in support or in extension of his opinion. A brief consideration and discussion of the points made in appellants' brief may serve, however, to throw into stronger relief and make more clear, the inevitableness of his ruling.

Appellants correctly say:

"Chapter 6, title 128, of the 1925 Revised Statutes of Texas (Levee Improvement Districts) under which the bonds were issued, provides that payment of the taxes pledged as their security may be enforced by the county tax collector, by the supervisors, or on the failure of the supervisors to bring suit within sixty days after the taxes have become delinquent, by the holder or holders of any bonds (articles 8016, 8017). The statute further provides that all suits for the collection of taxes are to be filed in the name of the District."

■ This summary, however, too much foreshortens, too greatly telescopes, the

amount of such taxes, together with penalties, interest, attorneys fees and costs; such judgment shall provide for the sale of each tract of land by the sheriff or any constable of the county in which it is situated in the same manner as other judicial sales of land; and it shall be immaterial that the ownership of said land be incorrectly alleged in said proceedings. * * *

"(i) Whenever the board of supervisors of any levee improvement district shall fail to commence suits within sixty days after taxes have become delinquent, the holder or holders of any bonds issued by such levee improvement district shall have the right to employ counsel to bring such suit in the name of the levee improvement district upon the relation of such holder or bond holders; and such suits may be proceeded with in the same manner as hereinabove prescribed, and shall in all respects be governed by the provisions of this section."

"(j) The method of procedure provided in this section shall be cumulative, and shall not repeal or supercede [supersede] any other procedure provided herein for the collection of such taxes."

comprehensive provisions of the chapter. In careful detail, beginning with article 7972 and ending with article 8042, it provides for the creation, and continuance, the establishment and governance of levee improvement districts, as governmental agencies, bodies politic and corporate. It endows them with public power, and charges them with the public duty and obligation of conserving and reclaiming overflow lands as contemplated by section 59, article 16, of the Constitution of the state for the conservation and development of its natural resources. Wilmarth v. Reagan (Tex.Civ. App.) 231 S.W. 445; Mann v. Trinity Farm Co. (Tex.Civ.App.) 270 S.W. 923; State v. Bank of Mineral Wells (Tex.Civ. App.) 251 S.W. 1107. Such districts are, in every sense, public districts. They are not and cannot be regarded as reduced by anything in article 8017 to mere conduits or connections between bondholders and taxpayers. In no proper sense, then, can such a levee district, when suing under the act to collect taxes, whether of its own motion or on the relation of bondholders, be regarded as a nominal party.

"The statute places the public duty upon the supervisors of the levee district to enforce collection of taxes. The funds so collected are simply held in trust for the purposes expressed in the statute, of paying the interest and the principal of the bonded indebtedness. Such officers are not and do not become representatives of the bondholders, but act as a public agency, and not one of a private nature, for the administration of the public trust confided to them." Preston v. Anderson County Levee Improvement District No. 2 (Tex.Civ.App.) 3 S.W.(2d) 888, 891.

Appellants' argument that since the taxes in question are levied and assessed solely to raise funds to pay the interest and sinking fund on the bonds, and the bond funds never actually come into the hands of the district supervisors, but are collected by the county tax collector, and by him turned over to the county treasurer as ex-officio treasurer of the district, the district must be regarded as a mere agency or instrumentality of the bondholders, will not do. By placing the emphasis on the bonds, instead of on the district, it incorrectly assumes that the district was made for the bonds, instead of the bonds for the district; that the district is created solely for and has no other function than, to issue bonds.

The most cursory reading of the statute, shows the error of this view. The District is first created by petition, judgment and findings. It is provided by article 7979, "A levee improvement district created as herein specified shall be a governmental agency and a body politic and corporate, with such powers of government and with the authority to exercise such rights, privileges and functions concerning the purposes for which it is created as may be conferred by this chapter, or any other law of this State to the benefits of which it may become entitled." Article 7980 empowers each such district to construct, maintain, add to, and rebuild all works and improvements within it necessary or proper to fully accomplish any plan of reclamation lawfully adopted, for or on behalf of such district. It authorizes the district to issue bonds or incur indebtedness or not, according as the district may determine. It provides that no bonds shall be issued without first being voted.

Article 7981 confers the power of eminent domain. Provision is made for the appointment of supervisors, with detailed and comprehensive duties and powers in administering the district and its affairs, in connection with the district engineer. A complete and comprehensive scheme of taxation is provided, including collection. Article 8016 makes it clear that delinquent taxes of levee districts are collectible and to be collected in the same manner and with like effect as state and county taxes.

Article 8017 provides for collection by suit as cumulative of all other procedure for the collection of taxes. It provides that such action shall be in the nature of a proceeding in rem and authorizes service by publication. The county treasurer of the county is ex-officio treasurer of levee improvement districts and he shall keep an accurate report of all moneys received by him belonging to such districts, and all moneys paid out by him. "He shall pay out no money except upon a voucher signed by two of the district supervisors and countersigned by the county judge." Article 8020. The supervisors are required to select a depository for the funds of the district, and the treasurer must deposit such funds therein. The district supervisor is authorized to award all contracts and supervise and pay for all work to be done.

In the light of such a comprehensive scheme, it is quite plain that subdivision

(i) operates not to permit bondholders to sue as real parties, but to permit them, after only sixty days' delay, to put the district into court as the active and real party plaintiff, suing and foreclosing for the taxes due, rather than obliging them to wait until judgments are obtained on bonds, and then by mandamus action, compelling the district to sue.

■ We think it equally plain that the statutory suit plaintiffs have filed is not in any sense ancillary to or in aid of the judgments they have obtained. Nothing in the statute they invoke speaks of judgments, nothing in it of suits being instituted as ancillary or dependent proceedings. On the contrary, the article of the statute authorizes the suit on the relation of bondholders as a levee district suit, and specifically provides that it shall "be proceeded with in the same manner as hereinabove prescribed, and shall in all respects be governed by the provisions of this section."

The authorities appellants rely on are without bearing here. In the Preston Cases,[2] suits to collect judgments against a district which had issued bonds, by foreclosure against specific properties to the extent, as to each, of the taxes assessed against it, for the payment of the bonds, the remedy sought was denied. The court held that "in the absence of legislation expressly authorizing such a proceeding, the court had no power to grant the relief sought," and that, as to the collection of taxes, the method prescribed by the Legislature was exclusive.

There was no question in those cases of the jurisdiction of the court; none as to nominal and real parties; none as to the proper construction of a statute like the one at bar, for in those cases there was no statute authorizing suits for taxes either by, or at the relation of, bondholders. There was no suit brought by the district upon their relation.

In the Cushman Case, too,[3] no statute was involved; there was no question of real or nominal parties, none of diversity jurisdiction. Neither was there any question of bonds or the collection of taxes, for their satisfaction. That case involved street paving assessments, secured by liens, and the ancillary enforcement of those liens with the payment of the collections directly to the contractors, who, by judgments against the city, had become entitled to foreclose the assessment liens.

Guardian Savings & Trust Co. v. Road Improvement District, 267 U.S. 1, 45 S.Ct. 201, 69 L.Ed. 487, upon which appellants mainly rely, was not an ancillary proceeding. There was no question there of real or nominal parties. It was an original one under a statute providing a remedy by the appointment of a receiver to collect taxes which, as to bonds issued under it, had become part of the obligation of their contract and therefore of the rights of the bondholders. C/f Dallas County: Levee Improvement District v. Rugel (Tex.Com. App.) 36 S.W.(2d) 188. All that the Guardian Case held was that the right given bondholders, by the statute authorizing their issue, to have a receiver appointed to collect taxes, could be availed of as well in a federal court, where grounds of jurisdiction existed, as in a state court.

Simply viewed, the statute plaintiffs invoke authorizes bondholders, by bringing the district into court as plaintiff, to set in motion the machinery which the statute provides for the districts' use for collection by suit. It does not in terms or in effect authorize bondholders to sue at all either generally, or in their own interest or behalf. It merely authorizes them as relators, to put the district in motion as suitor, and to keep it moving as such for the general collection of taxes due generally, and for their garnering and gathering into the treasury and depository of the district. There they must be held by the district not for any particular bondholder or bondholders, but for all of those entitled to them. As to them, if not voluntarily applied as they should be, to the objects for which collected, the district stands subject to suit by mandamus, or other appropriate proceeding, to compel their proper application. The suit, then, though brought on their relation, was not the plaintiffs' suit, either ancillary or original. It was the suit of the district.

The judgment dismissing it was correctly entered. It is affirmed.

[2] Preston v. Sturgis Milling Co. (C.C.A.) 183 F. 1, 2, 32 L.R.A.(N.S.) 1020; Preston v. Calloway (C.C.A.) 183 F. 19; Preston v. Chicago, St. L. & N. O. R. Co. (C.C.A.) 183 F. 20.

[3] Cushman v. Warren-Scharf Asphalt Pav. Co. (C.C.A.) 220 F. 857.